IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| **BRYAN WRIGHT** and **ALANA FADELY**, individually, and on behalf of all others similarly situated, | : : : : | CIVIL ACTION No.: Hon. |
| Plaintiffs, | : : | |
| v. | : : | |
| **LIBERTY MUTUAL GROUP, INC.**, | : : | |
| Defendant. | : : | |

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Bryan Wright and Alana Fadely, individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned attorneys, hereby bring this Collective and Class Action Complaint against Defendant, Liberty Mutual Ins. Co. ("Defendant"), and allege as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2.      Plaintiffs and the putative collective members consist of current and former call center agents, or similar positions ("Agents" or "Plaintiffs"), who were compensated on an hourly basis. Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Agents for all pre- and mid-shift off-the-clock work.

1

3.      In particular, Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only clocked in and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

4.      An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

5.      In addition to this pre-shift work, Defendant also required its Agents to perform unpaid mid-shift work during their unpaid meal periods.  The Agents' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

6.      The Agents routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without the required overtime premium for hours worked over 40 per week.

7.      Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

8.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first

principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2 (a copy of which is attached as ***Exhibit A***).

9.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id.*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10.     In addition to the Agents' off-the-clock work, Defendant failed to compensate all of its Agents at the appropriate overtime rate using the FLSA's "regular rate" calculation. More specifically, Defendant failed to include shift premiums, bonuses, or other remuneration paid to its Agents in calculating their correct overtime premiums as required by the FLSA. 29 C.F.R. §§ 778.108-109. Instead, Defendant only paid its Agents an overtime premium calculated from their base hourly rates.

11.      Defendant's practice of failing to compensate its Agents for all hours worked, and failing to compensate Plaintiffs at the appropriate overtime rate, violated the Agents' rights under the FLSA.

12.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly call center agents who worked for Defendant at any time during the past three years.*

13.     Defendant is liable for its failure to pay it Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of 40 per week.

14.     Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-shift work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

16.     This Court has diversity jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1332 because the named Plaintiffs and Defendant reside in different states.

17.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's Agents engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

19.     This Court has personal and general jurisdiction over Plaintiffs and Defendant because it maintains its principal place of business in Massachusetts. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), cert. denied, 142 S. Ct. 2777 (2022).

20.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) and L.R. 40.1 (c) because Defendant conducts business in this District and division, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District and division.

21.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

22.     Plaintiff, Bryan Wright, is an adult resident of Struthers, Ohio.  He worked for Defendant as an hourly call center agent in New Castle, Pennsylvania from 2017 until March 2021. Wright remains currently employed by Defendant but has been on medical leave since March 2021. Wright's consent to join form is attached as ***Exhibit B***.

23.     Plaintiff, Alana Fadely, is an adult resident of New Castle, Pennsylvania.  She worked for Defendant as an hourly call center agent from 2012 until January 14, 2021. Fadely's consent to join form is attached as ***Exhibit C***.

24.     Additional putative Collective members were or are employed by Defendant as hourly call center agents in Arizona, Florida, Indiana, Massachusetts, Pennsylvania, Texas, and potentially other states during the past three years and their consent forms will also be filed in this case.

25.     According to its website, Defendant is a global insurer offering auto & vehicle, property, casualty, commercial auto, and risk insurance to 29 countries and economies around the world.[1]

26.     Defendant is a Massachusetts corporation with its offices and principal place of business located in Boston, Massachusetts.

---

[1]   https://www.libertymutualgroup.com/about-lm/corporate-information/overview   (last   visited September 26, 2022).

27.     Defendant maintains a registered office in Massachusetts and its registered agent can be served as follows: Corporation Service Company, 84 State Street, Boston, Massachusetts, 02109.

### FACTUAL ALLEGATIONS

28.     Defendant maintains numerous call centers throughout the country which provide customer, sales, and claims support to Defendant's customers across the globe.[2]

29.     Defendant has employed hundreds of call center agents[3] over the past three years as part of its call centers' business lines to handle consumer and customer phone calls concerning various issues.[4]

30.     Defendant typically scheduled its Agents to work 8.5 hour shifts (or longer), five days per week, with a scheduled 30-minute unpaid meal period each shift.

31.     Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

32.     Throughout their employment with Defendant, the named Plaintiffs were full-time Agents who worked in Defendant's New Castle, Pennsylvania call center, regularly worked 40 hours per week, and earned in excess of $18 per hour.

33.     Throughout their employment with Defendant, Plaintiffs' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

### Pre-Shift Work

---

[2] https://www.libertymutual.com/customer-support (last visited September 26, 2022).

[3] Defendant uses several job titles for its Agents, including, but not limited to: Inside Sales Representative, Licensed Territory Representative, Claims Customer Care Associate, and Customer Service Representative.

[4] https://www.libertymutual.com/customer-support (last visited September 26, 2022).

34.    Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

35.    Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

36.    Throughout their employment with Defendant, Plaintiffs and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

37.    Upon arriving at Defendant's call center (and/or upon arriving to their home computer during the pandemic), Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

38.    The pre-shift boot-up and login process generally consisted of the following steps:

a.    The Agents turned on or woke up their computer;

b.    After waiting for the computer to boot or wake up, the Agents were prompted to login to Windows using the ctrl+alt+delete function, enter their username and password, and connect to Defendant's network;

c.    After the Agents were logged into Windows and connected to Defendant's network, they began the required process to open, enter their assigned login credentials, and access the necessary computer applications (*e.g.*, Central Billing System, Notepad, Knowledge Center, Outlook (e-mails), Microsoft Teams, Customer Service Workbench, Avaya (the softphone), etc);

d.    After the Agents completed the required login process, they opened Defendant's timekeeping software program (iSTAR), entered their assigned login credentials, and clocked in for their shifts; and

e.    The Agents made themselves "available" on the softphone and began receiving phone calls at the moment their shifts began.

39.     The boot-up and login process described above took substantial time on a daily basis, ranging from 15-30 minutes per shift, or more, depending on how fast/slow the computers were operating.

40.     The Agents also frequently encountered technical problems while performing this boot-up and login process which often caused the process to take longer than 15-30 minutes.

41.     Defendant's Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiffs and all other Agents worked off-the-clock for at least 15-30 minutes (or more) before each shift for which they were never compensated.

42.     If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

43.     To the extent Defendant allowed its Agents to clock in a certain amount of time before the start of their shifts (*e.g.*, up to 5 minutes) to allow for the boot-up and login process, this grace period was exceeded by the amount of time it *actually* took Agents to complete the process. As a result, the Agents still performed off-the-clock work for which they were not compensated.

44.     Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

45.     Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and clocked in on time.

46.     Defendant also had express and constructive knowledge that its Agents frequently experienced technical problems with their computers or phones during the boot-up and login process.

47.     Defendant's policies and practices discouraged its Agents from recording all time worked.

48.     Despite having express and constructive knowledge of its Agents' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents. *Andrews v. Weatherproofing Techs., Inc*., 277 F. Supp. 3d 141, 151 (D. Mass. 2017) (citing *Craig v. Bridges Bros. Trucking LLC,* 823 F.3d 382 (6th Cir. 2016)).

### Mid-Shift Work During Unpaid Meal Periods

49.     Defendant provided its Agents with a scheduled 30-minute unpaid meal period during each work shift.

50.     However, Defendant also required its Agents to perform off-the-clock work during these unpaid meal periods, including returning from the 30-minute meal period approximately 2-5 minutes early in order to have enough time to log back in prior to resuming their shifts.  This process was similar to the pre-shift login process described above (albeit abbreviated), and this time also went unpaid.

51.     According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal."  (***Exhibit A***, Fact Sheet #64 at p. 2).

52.     The mid-shift off-the-clock time worked by Defendant's Agents directly benefitted Defendant and the process was an integral and indispensable part of the Agents' job responsibilities.

53.     Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

54.     Defendant had express and constructive knowledge that its Agents took unpaid meal periods and that its Agents also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and clocked in on time for their shifts to resume.

55.     Despite having express and constructive knowledge of its Agents' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents. *Andrews v. Weatherproofing Techs., Inc.*, 277 F. Supp. 3d 141, 151 (D. Mass. 2017) (citing *Craig v. Bridges Bros. Trucking LLC,* 823 F.3d 382 (6th Cir. 2016)).

**Regular Rate Calculation**

56.     In addition to the unpaid off-the-clock work described above, Defendant failed to pay its other Agents the correct overtime rate under the FLSA.

57.     Defendant's Agents were eligible for, and regularly received, bonuses, shift premiums, or other remuneration in addition to their base hourly rate.

58.     Defendant failed to take its Agents' bonuses, shift premiums, and other remuneration into consideration when calculating their regular rate of pay and resulting overtime rate premium. As a result, Defendant did not pay the proper overtime rate.

59.     As non-exempt employees, the Defendant's Agents were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

60.     Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108.

61.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. § 778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

62.     Defendant's shift premiums, bonuses, and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

63.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendants carry the burden to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Defendant's Agents for work performed are included in the base calculation unless specifically excluded by statute.

64.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is

permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

65.     Plaintiffs' "total remuneration" included not only their hourly pay, but also any bonuses, shift premiums, and other compensation. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."

66.     However, Defendant completely failed to incorporate the bonuses, shift premiums, and other remuneration into its Agents' regular hourly rate calculation, resulting in a *prima facie* violation of the FLSA.

### FLSA COLLECTIVE ACTION ALLEGATIONS

67.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked for Defendant*
> *at any time during the past three years.*

(hereinafter referred to as the "Collective").  Plaintiffs reserve the right to amend this definition if necessary.

68.     Excluded from the Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

69.     At all relevant times, Defendant was an "employer" and Defendant directed and directly benefitted from the off-the-clock activities performed by its Agents.

70.     At all relevant times, Defendant controlled its Agents' work schedules, duties, protocols, applications, assignments and employment conditions.

71.     At all relevant times, Defendant was able to track the amount of time its Agents spent booting up and logging into Defendant's computer network and software programs; however, Defendant failed to document, track, or pay its Agents for the off-the-clock work they performed.

72.     At all relevant times, Defendant's policies and practices deprived its Agents of overtime wages owed for the pre- and mid-shift activities they performed off-the-clock.

73.     At all relevant times, Defendant's failure to perform the required FLSA regular rate calculations deprived its Agents of the appropriate overtime premiums.

74.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The group of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

75.     The employment relationships between Defendant and every proposed Collective member are the same and may differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated off-the-clock time owed to each employee and the failure to perform the regular rate calculations – do not vary substantially among the proposed Collective members.

76.     The key legal issues are also the same for every proposed Collective member: (a) whether the 15-30 minutes (or more) of required pre-shift off-the-clock time amounted to compensable overtime under the FLSA; (b) whether the 2-5 minutes (or more) of required mid-shift off-the-clock time amounted to compensable overtime under the FLSA; (c) whether

Defendant fulfilled its recordkeeping obligations under the FLSA; and (d) whether Defendant correctly performed the regular rate calculations as required under the FLSA.

77.     Plaintiffs estimate that the proposed Collective, including both current and former Agents over the relevant period, may include over 500 current and former employees.  The precise number of Agents should be readily available from a review of Defendant's personnel and payroll records.

78.     Pursuit of this action on a collective basis will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the proposed Collective members.

79.     Accordingly, the Court should conditionally certify the proposed Collective for purposes of authorizing a written notice regarding the pendency of this collective action to be sent to the proposed Collective members so they can learn about this action and exercise their right to opt-in, if they so desire.

80.     Plaintiffs should be permitted to serve as representative of those who consent to participate in this collective action.

## <u>RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS</u>

81.     Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked for Defendant in Pennsylvania at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class").  Plaintiffs reserve the right to amend this definition if necessary.

82.     The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical.  Plaintiffs reasonably estimate that there are hundreds of Rule 23 Pennsylvania Class members.  These Class members

should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

83.    There is a well-defined community of interest among Rule 23 Pennsylvania Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class.  These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the pre-shift time Rule 23 Pennsylvania Class members spend on boot-up/login activities prior to "clocking in" for each shift is compensable time; and

      b.    Whether the mid-shift off-the-clock work performed by the Rule 23 Pennsylvania Class upon returning from meal periods is compensable.

84.    Plaintiffs' claims are typical of those of the Rule 23 Pennsylvania Class in that they and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Pennsylvania Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

85.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and they have retained counsel who are qualified and experienced in the prosecution of class actions involving the Pennsylvania wage/hour statutes. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

86.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is not economically feasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts.

87.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

88.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

89.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

90.     Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked for Defendant in the United States at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

91.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs reasonably estimate that there are over 500 Rule 23 Nationwide Class members.  The precise number of Rule

23 Nationwide Class members should be readily available from a review of Defendant's personnel and payroll records.

92.     There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions include, but are not limited to, the following:

    a.  Whether the pre-shift time that Rule 23 Nationwide Class members spend on boot-up/login activities prior to "clocking in" for each shift is compensable time;

    b.  Whether the time that Rule 23 Nationwide Class members spend on work activities during their unpaid meal periods, such as logging back into computer systems and clocking in is compensable time;

    c.  Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

93.     Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

94.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

95.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

96.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

97.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

98.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

99.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

100.    At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

101.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

102.    At all times relevant to this action, Plaintiffs and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

103.    Plaintiffs and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

104.    Plaintiffs and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

105.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

106.    At all times relevant to this action, Defendant required Plaintiffs and the proposed Collective members to regularly perform 15-30 minutes or more of pre-shift computer boot-up and login time per shift, and 2-5 minutes or more mid-shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

107.    All of the off-the-clock worked performed by Plaintiffs and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

108.    In the aggregate, the amount of Plaintiffs' and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

109.     In workweeks where Plaintiffs and the proposed Collective members worked 40 hours or more, the uncompensated pre- and  mid-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

110.     To the extent Plaintiffs and the proposed Collective members received bonuses, shift premiums, and/or other compensation that was properly classified by Defendant as nondiscretionary, the calculations Defendant used to determine the regular rate of pay did not meet the requirements set forth in 29 U.S.C. § 207(e) and the Code of Federal Regulations, thus depriving Agents of additional overtime pay.

111.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Agents to complete the pre-shift boot-up and log-in process and the mid-shift login process, and Defendant could have properly compensated Plaintiffs and the proposed Collective members for the boot-up and login work they performed, but did not. Likewise, Defendant knew or could have easily determined how to perform the correct FLSA regular rate calculations.

112.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiffs and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 211, *et seq.*, FAILURE TO MAINTAIN REQUIRED RECORDS

113.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

114.     The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees).  See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

20

115.    As an employer, Defendant is subject to the FLSA's recordkeeping requirements.

116.    Defendant's obligations were to maintain and preserve payroll or other records containing, without limitation, the total hours actually worked by each employee each workday and total hours worked by each employee each workweek.  29 C.F.R § 516.2.

117.    Upon information and belief, Defendant maintained corporate policies and/or practices of evading pay for its non-exempt employees by failing to track, and maintain records of, their actual work time.

118.    Defendant failed to maintain and preserve accurate timesheets and payroll records in connection with it Agents' employment as required by 29 C.F.R § 516.2.

119.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

120.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

121.    As a result of Defendant's recordkeeping violations, Plaintiffs seek a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

## COUNT III

## VIOLATIONS OF THE PENNSYLVANIA WAGE ACTS

122.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

123.    The Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* 43 P.S. § 333.104.

124.    43 P.S. § 333.113 provides that an employee who is not paid in accordance with the Pennsylvania Minimum Wage Act may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees.

125.    The Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.* requires that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

126.    Under 43 P.S. § 260.9a, an employee aggrieved by an employer's violation of the Pennsylvania Wage Payment and Collection Law may bring a civil action to recover all unpaid amounts, plus liquidated damages, costs and reasonable attorneys' fees. *See also* 43 P.S. § 260.10.

127.    Plaintiffs worked for Defendant as Agents in Pennsylvania, and they were thus covered by the Pennsylvania Wage Acts.

128.     Defendant required Plaintiffs to work in excess of forty (40) hours per week but failed to pay Plaintiffs overtime compensation as required under the Pennsylvania Minimum Wage Act, which Plaintiffs seek to recover pursuant to 43 P.S. § 333.113.

129.     Defendant failed to pay Plaintiffs required compensation as required under the Pennsylvania Wage Payment and Collection Law, which Plaintiffs seek to recover pursuant to 43 P.S. § 260.9a.

130.     Defendant's policies and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

131.     As a result of Defendant's foregoing violations, Plaintiffs were illegally deprived of wages in amounts to be determined at trial, and they are entitled to recovery of such total unpaid amounts, liquidated damages, reasonable attorneys' fees and costs.

## COUNT IV

## BREACH OF CONTRACT

132.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

133.     Defendant had binding and valid contracts with Plaintiffs to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs performed on behalf of Defendant.

134.     Plaintiffs earned pre-established hourly rates in excess of $18 per hour.

135.     Plaintiffs accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre- and mid-shift work activities, described herein.

136.    By not paying Plaintiffs the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiffs.

137.    Plaintiffs' remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiffs more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

138.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs spent performing off-the-clock activities.

139.    As a direct and proximate result of Defendant's contractual breach, Plaintiffs were damaged in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT/QUANTUM MERUIT

140.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

141.    Plaintiffs and Defendant made binding and valid agreements whereby Defendant was obligated to pay each Plaintiff for each hour worked at a pre-established hourly rate in consideration for the work Plaintiffs performed for Defendant.

142.    Plaintiffs accepted the terms of Defendant's promises under the agreement by performing their duties each shift including the unpaid work activities described herein.

143.    Defendant accepted and retained the benefits conferred upon them by Plaintiffs.

144.    By not paying Plaintiffs the agreed upon hourly wage (i.e., the value of services) for all work performed, Defendant was unjustly enriched.

145.    Plaintiffs' remedies under the FLSA may be inadequate to the extent Defendant paid more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

146.     As a direct and proximate result of Defendant's unlawful actions, Plaintiffs are entitled to damages equal to the amount Defendant was unjustly enriched at Plaintiffs' expense, plus an award of pre- and post-judgment interest at the applicable legal rate.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiffs request the following relief:

a.     Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and contact information for all proposed Collective members, and authorizing Plaintiffs to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c.     Certifying this action as a class action (for the Rule 23 Pennsylvania Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Count III);

d.     Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' common law claims (Counts IV and V);

e.     Designating Plaintiffs as the representatives of the FLSA Collective action, the Rule 23 Pennsylvania Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

f.     Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.     Declaring Defendant's violations of the FLSA were willful;

h.     Declaring Defendant violated the Pennsylvania Wage Acts and that said violations were intentional and willful;

i.     Declaring Defendant breached its contracts with Plaintiffs failing to pay Plaintiffs for each hour they worked at a pre-established (contractual) hourly rate;

j.     Declaring Defendant was unjustly enriched through its failure to pay Plaintiffs and the Rule 23 Nationwide Class for the off-the-clock work

discussed herein;

k.     Granting judgment in favor of Plaintiffs and the proposed Collective members as against Defendant and awarding Plaintiffs and the proposed Collective members the full amount of damages and liquidated damages available by law;

l.     Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute; and

m.     Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Bryan Wright and Alana Fadely, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:  October 4, 2022               Respectfully Submitted,

*/s/ Benjamin K. Steffans*____
Benjamin Knox Steffans (BBO# 568535)
Steffans Legal PLLC
10 Wendell Ave. Ext. Suite 208
Pittsfield, MA 01201
(413) 418-4176
bsteffans@steffanslegal.com

*/s/ Jesse L. Young*
Jason J. Thompson (P47184)*
Jesse L. Young (P72614)*
Albert J. Asciutto (P82822)*
Sommers Schwartz, P.C.
One Towne Square
17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com

aasciutto@sommerspc.com
*pro hac vice motions forthcoming*

*Attorneys for Plaintiffs*