**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ──────────────────────────── ) | |
| **BRYAN WRIGHT and ALANA FADELY,** ) | |
| *individually, and on behalf of all* ) | |
| *others similarly situated,* ) | |
| ) | |
| **Plaintiffs,** ) | **Civil Action No.** |
| ) | **22-11687-NMG** |
| **v.** ) | |
| ) | |
| **LIBERTY MUTUAL GROUP, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ──────────────────────────── ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves claims for overtime pay. Plaintiffs Bryan Wright ("Wright") and Alana Fadely ("Fadely") (collectively, "the plaintiffs") bring this suit individually and on behalf of all others similarly situated against Liberty Mutual Group, Inc. ("Liberty" or "defendant") for, inter alia, violating the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 et seq., by failing to compensate current and former call center agents for all hours worked, including overtime hours worked at the appropriate overtime rate. Pending before the Court is plaintiffs' motion for conditional certification of the putative collective. See Docket No. 24. For the following reasons, the motion will be allowed, in part, and denied, in part.

I.  **Background**

Liberty is a Massachusetts-based insurer that writes various insurance policies in dozens of countries.  Liberty maintains call centers in multiple states which provide a wide range of customer service and claims support to its customers.

Wright worked for Liberty as an hourly call center agent assigned to its New Castle, Pennsylvania location from 2017 until March, 2021, and has been on medical leave since that time.  Fadely also worked as an hourly call center agent for Liberty at its New Castle, Pennsylvania location.  She began working as an agent in 2012 and continued in that role until January, 2021.

Plaintiffs assert that call center agents working for Liberty were required to work five days per week and at least eight hours per day with a thirty-minute unpaid meal period. Agents were allegedly responsible for 1) starting up their computers, 2) launching essential software applications and 3) logging into their telephone systems in order to be ready to provide customer service and claims support in response to customer calls and queries.  Plaintiffs claim that, in violation of the FLSA, defendant's strict job performance and schedule adherence policies forced agents to arrive and begin working before their shifts started and before their meal periods

finished so that they could complete those tasks off-the-clock and be "phone ready" as soon as their shifts began or resumed.

Furthermore, plaintiffs contend that defendant miscalculated their regular rate of pay and therefore their overtime pay.  Specifically, plaintiffs allege that Liberty did not take into account shift premiums and other remunerative considerations when determining their regular rate of pay per hour.

## II.  <u>Motion for Conditional Certification</u>

Plaintiffs brought this five-count action in October, 2022. In November, 2022, they moved under 29 U.S.C. § 216(b) to certify a proposed class conditionally with respect to Count I (<u>i.e.</u> their FLSA overtime claim) and for a Court Order of notice to putative class members.  The proposed collective action class includes:

> All current and former hourly call center agents who worked for Defendant at any time during the past three years (the "FLSA Collective").

In support of their motion, Wright and Fadely offer nearly identical declarations detailing their daily duties and stating, <u>inter alia</u>, that they were:

> 1) told to follow a specific protocol to log into Liberty's computer network and start up pertinent software applications,
>
> 2) evaluated by their "schedule adherence", which was the amount of time they were available to receive phone calls when clocked in, and

3) as a result, forced to perform off-the-clock work before their shifts began and when they came back from unpaid meal breaks so that they would be "phone ready" as soon as they clocked in.

Plaintiffs also state that they received various kinds of renumeration which were not factored into the determination of their regular hourly rate and overtime pay.  Finally, plaintiffs have submitted five job descriptions taken from Liberty's website in support of their contention that a variety of different job titles at Liberty (e.g. Inside Sales Representative, Claims Customer Care Representative and Remote Customer Service Representative) refer to the common position and duties of a call center agent.

Liberty opposes the motion for conditional certification. Liberty advocates that this Court should eschew the two-step process that courts in this district typically apply to certification of FLSA collectives.  Even under the "fairly lenient standard" applicable at the first stage of that process, however, defendant contends that:

1) the named plaintiffs and the rest of the putative class members were not subject to a common policy or plan that violated the law,

2) the putative class members did not encounter similar factual circumstances, and

3) there is no indication that any other employees are interested in joining this action.

In its opposition to the motion, Liberty proffers declarations from several managers and administrators which

describe the different compensation and performance policies, start-up and log-in protocols, and technology used by various customer service groups at Liberty's many call centers throughout the country.

### A. Legal Standard

If an individual employee believes that his or her employer has violated the FLSA, the employee is entitled to bring an action against that employer on behalf of the individual and other "similarly situated" employees pursuant to section 216(b) of the FLSA.  Such actions are permitted to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

To bring a collective action, the plaintiff must be "similarly situated" to the putative class members. Id.  To determine whether that is the case, the Court follows a two-tiered approach. Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001).  Although defendant submits that other appellate courts, including the Fifth Circuit Court of Appeals, have rejected the two-step conditional certification process in favor of a more robust, gatekeeping approach, this Court will continue to follow the two-tier approach adopted by "the majority of courts addressing this issue in the First

Circuit". <u>Trezvant</u> v. <u>Fid. Emplr. Servs. Corp.</u>, 434 F. Supp. 2d
40, 43 (D. Mass. 2006).

First, at the "notice stage" of the two-tier approach, the
Court relies upon the initial pleadings and affidavits to
determine, under a "fairly lenient standard", whether the
putative class members "were subject to a single decision,
policy, or plan that violated the law." <u>Kane</u>, 138 F. Supp. 2d at
214. Second, after the close of discovery and the filing of a
motion from an employer, the Court considers whether de-
certification is warranted. <u>See</u> <u>id.</u>

### B. Application

We are now at the first stage and the Court must determine
whether members of the putative class are "similarly situated".
Although that determination is made using a fairly lenient
standard, the standard is not "invisible". <u>See</u> <u>Houston</u> v. <u>URS</u>
<u>Corp.</u>, 591 F. Supp 2d 827, 831 (E.D. Va. 2008) (citations
omitted). Rather, "as a matter of sound case management" and to
avoid "a frivolous fishing expedition at the employer's
expense", courts should generally require the party moving for
conditional certification to make

> a preliminary factual showing that there actually exists a
> similarly situated group of potential plaintiffs.

<u>Melendez Cintron</u> v. <u>Hershey Puerto Rico, Inc.</u>, 363 F Supp. 2d
10, 18 (D.PR. 2005). At a minimum, the plaintiff must

> put forth some evidence that the legal claims *and*
> factual characteristics of the class [] are similar.

Trezvant, 434 F. Supp. 2d at 44.

The Court concludes that plaintiffs have not met their burden of establishing the propriety of conditional certification with respect to the entirety of the proposed class because they have not shown that the putative class members "were subject to a single decision, policy, or plan that violated the law." Kane, 138 F. Supp. 2d at 214. The Court will, however, conditionally certify a more limited, manageable class of call center agents as to whom plaintiffs have met their burden.

Plaintiffs contend that they may satisfy their burden by showing either 1) that the members of the proposed collective held similar job positions and duties or 2) that they were subject to the same policy, plan or scheme which violated the FLSA. In support of their contention that the first pathway (mere similarity of job positions and duties) is by itself a viable route to conditional class certification, plaintiffs cite to Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178 (D. Mass. 2016) and Litz v. Saint Consulting Group, Inc., No. 11-CV-10693-GAO, 2012 U.S. Dist. LEXIS 20586 (D. Mass. Feb. 17, 2012).

Plaintiffs have, however, misinterpreted those cases. In both Cunha and Litz, the FLSA violation alleged by the

- 7 -

plaintiffs was that certain employees were misclassified as exempt from overtime pay.  The classes in those cases were not conditionally certified merely because the putative class members held similar jobs and had similar duties.  Instead, the conditional classes were certified on the grounds that they were comprised of employees subject to a common policy or plan (i.e. classification as exempt) which, in combination with the evidence of their similar jobs and duties proffered in those cases, allegedly violated the FLSA. See Cunha, 221 F. Supp. 3d at 182 (explaining that the managers at issue had the same "general job duties and responsibilities" and were all classified as exempt from overtime pay under the FLSA); Litz, 2012 U.S. Dist. LEXIS 20586, at *5 (noting that the putative class of purportedly misclassified employees had the same job description and duties, similar employment terms, recorded and billed their time hourly and received similar training and directives).

    Neither case, therefore, provides an alternative to the requirement that

> [e]mployees may proceed as a class only to the extent
> they were subject to a single decision, policy, or
> plan that violated the law.

O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246, 250 (D. Mass. 2006) (cleaned up) (quoting Kane, 138 F. Supp. 2d at 214); see also Trezvant, 434 F. Supp. 2d at 43 (holding that "an

unsupported allegation of a common plan" is insufficient for
conditional certification).

Here, the record does not support a finding that a single
policy or plan violated the law with respect to the proposed
class of

> [a]ll current and former hourly call center agents who
> worked for [Liberty] at any time during the past three
> years[.]

Specifically, the two named plaintiffs worked together at a
call center in New Castle, Pennsylvania and yet seek to certify
a class of hundreds of employees who worked at dozens of call
centers throughout the United States.  Although plaintiffs have
submitted their own declarations in support of conditional
certification, they have not submitted declarations of any other
employees. See Keller-Brittle v. Collecto Inc., No. 18-CV-11836-
ADB, 2018 U.S. Dist. LEXIS 201361, at *7-9 (D. Mass. Nov. 28,
2018) (explaining that plaintiffs' allegation of a company-wide
unlawful policy was insufficient because they could only attest
to their own experiences at a single office location).

Wright testifies that he had conversations with three
additional agents about Liberty's purportedly improper
compensation policies but Liberty responds in a sworn
declaration that those agents also worked for the same New
Castle call center as did Wright and Fadely.  Finally,
plaintiffs do not provide any evidence that other putative

members of the class are interested in joining the suit. See
O'Donnell, 429 F. Supp. 2d at 250 (criticizing the breadth of a
proposed class which would include thousands of "unidentified
individuals in different departments and locations" who had
shown no interest in the suit).

Apart from plaintiffs' declarations describing the
procedures and policies in place at a single call center, the
only evidence they submit in support of their assertion that
hundreds (if not thousands) of agents working at other call
centers were subject to the same unlawful policy or plan is a
set of five job descriptions from Liberty's website.  Those job
descriptions indicate that call center agents with various job
titles had substantially similar duties.  Furthermore, the Court
is urged to infer that such agents must have performed similar
boot-up and login tasks due to the nature of their job duties.

The proffered job descriptions do not, however, provide any
insight into whether those boot-up and login tasks were
performed off-the-clock due to a common policy or plan.  In
fact, defendant has submitted multiple declarations which
describe significant variations between the compensation and
performance policies in place at different call centers and with
respect to different groups of call center agents. See Trezvant,
434 F. Supp. 2d at 51 (finding there was insufficient evidence
that employees with similar roles who worked at different

- 10 -

offices were all "subject to a common policy").  Thus, plaintiffs have shown that there is a group of similarly situated potential plaintiffs comprised of current and former call center agents assigned to Liberty's New Castle, Pennsylvania, location but no more than that.

Furthermore, the Court has reviewed the plaintiffs' proposed notice and consent form to which defendant objects. The Court will permit notice by mail and e-mail but will not authorize notice by text message. See Drake v. Tufts Associated HMO, Inc., No. 19-CV-11876-FDS, 2021 U.S. Dist. LEXIS 125814, at *17-18 (D. Mass. Feb. 12, 2021) (explaining that communicating by text message may be "unduly intrusive[] and is not likely to be necessary").  The parties need to confer with one another regarding defendant's other objections to plaintiffs' proposed notice and consent form.

## ORDER

For the foregoing reasons, plaintiffs' motion for conditional class certification (Docket No. 24) is, with respect to:

> All current and former hourly call center agents who worked for Liberty Mutual Group, Inc. ("Liberty") and were assigned to its New Castle, Pennsylvania office at any time during the past three years,

**ALLOWED**, but is otherwise **DENIED**.

Within 21 days of this Order, Liberty shall identify all putative collective members by providing to plaintiffs' counsel a list of their names, last known addresses, dates and location of employment and email addresses in electronic and importable format.

Within 14 days of this Order, plaintiffs shall appropriately modify their proposed notice and consent form (Docket No. 24, Exhibit A), confer with defendant, submit such form to the Court and indicate whether defendant assents to the form as modified.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  July 21, 2023